**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**RENDELL ROBINSON**,

                                     Plaintiff,

                - v -                                       Civ. No. 9:10-CV-01442
                                                                                  (GTS/RFT)

**DR. KRISHNA VLADAMUNDI,**[1]
**DR. SAED HAIDER-SHAH**,

                                     Defendants.
_____

**APPEARANCES:**                                   **OF COUNSEL:**

**RENDELL ROBINSON**
Plaintiff, *Pro Se*
07-A-6175
Great Meadow Correctional Facility
Box 51
Comstock, NY 12821

**HON. ERIC T. SCHNEIDERMAN**          **ROGER W. KINSEY, ESQ.**
Attorney General of the State of New York    Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

      Plaintiff Rendell Robinson brings this civil rights action pursuant to 42 U.S.C. § 1983, alleging that Defendants were deliberately indifferent toward the treatment of his lower back pain. Dkt. No. 11, Am. Compl. Now before this Court is Defendants' Second Motion for Summary

---

[1] Although his name is spelled "Vladamudi" throughout the Docket, in his Declaration, he spells his name "Valdamundi" and "Vadlamudi." *See* Dkt. No. 56-2, Krishna Valdamundi Decl., dated Mar. 13, 2012. Therefore, hereinafter, we will refer to the Defendant as "Vladamundi."

Judgment filed pursuant to Federal Rule of Civil Procedure 56(a). Dkt. No. 55.[2] Plaintiff opposes the Motion. Dkt. No. 59. For the reasons that follow we recommend that Defendants' Motion be **GRANTED** and that this case be dismissed in its entirety.

## I. STANDARD OF REVIEW

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

It is clear that a party seeking summary judgment bears the burden of informing the Court of the basis for their motion and of identifying those portions of the record that they, the moving party, believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. *Celotex Corp. v. Catrett*, 477 U.S. at 323. The parties are to present the evidence that either supports or defeats their motion for summary judgment *via* their statements pursuant to Local Rule 7.1(a)(3), and the Court need not consider facts that are not in these statements or not supported by specific citations to the record. *See Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 291 (2d Cir. 2000) (The Court "is not required to consider what the parties fail to point out.") (internal quotation marks and citations omitted); *Amnesty Am. v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) ("We agree with those circuits that have held that FED. R. CIV. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a

---

[2] Defendants were granted leave to file a Second Motion for Summary Judgment by the Honorable Glenn T. Suddaby, United States District Judge. Dkt. No. 54, Dec. & Order, dated Mar. 8, 2013, at p. 7.

factual dispute.") (citations omitted).  The non-movant's burden to oppose summary judgment "arises only if the motion is properly supported." *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001) (citing Adickes *v. S.H. Kress & Co.*, 398 U.S. 144, 159 (1970)).  Thus, summary judgment is appropriate when the moving party has met its burden of production under Federal Rule of Civil Procedure 56(c) "to show initially the absence of a genuine issue concerning any material fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. at 159–60.  If the evidence submitted in support of the summary judgment motion does not meet the movant's burden, then "summary judgment must be denied even if no opposing evidentiary matter is presented." *Id*. at 160 (quoted in *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001)); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

## II. DISCUSSION

### A. Background

Plaintiff arrived at Marcy Correctional Facility ("MCF") on December 24, 2009, suffering from "chronic lumbar spinal cord pain and muscle spasms[,] loss of lumbar lardosis and degenerative changes," caused by injuries he sustained in a July 11, 2007 traffic accident.  Dkt. No. 59-1, Rendell Robinson Decl., dated August 20, 2012, at ¶¶ 5–6.  Prior to being transferred to MCF, Petitioner had received various treatments for his condition at his previous facility, Clinton Correctional Facility, including, *inter alia*, the prescription pain medication Piroxicam and physical therapy ("PT").  *See, e.g., id.* at ¶¶ 11, 47, & 56.

Between his arrival at MCF on December 24, 2009 and his transfer to Elmira Correctional facility on October 21, 2010, Plaintiff received treatment from Defendants Dr. Vladamundi and Dr. Haider-Shah.  *See, e.g.,* Dkt. No. 56-3, Defs.' Statement of Material Fact Pursuant to Rule 7.1

(hereinafter "Defs.' 7.1 Statement") at ¶¶ 2, 6, 26, & 148. Throughout his incarceration at MCF, Plaintiff frequently requested various forms of treatment for his back pain, including Piroxicam, PT, a softer or double mattress, a back brace, and/or a release from programming; however, these requests were routinely denied by medical staff and/or Defendants. *See, e.g., id.* at ¶¶ 4, 6, 13, 22–23, 30, 33–37, 42, 46, 49–50, 55, 74, 121, 124, & 142; Robinson Decl. at ¶¶ 7, 9–12, 20–23, 26, 30, 35–36, 39–41, 47–49, 56, 62, 64, 66, 67a,[3] 68a, 67b, 73–79, 83, 88–90, 93, 103–104, 112–113, 123, & 125. However, during the same time span, and almost without exception,[4] Plaintiff's complaints of back pain were routinely treated with either Tylenol, ibuprofen, Bengay, Flexeril, Fioricet, Tramadol, Ultram, Voltaren, in-cell exercises, warm soaks, or some combination thereof; eventually, Defendants prescribed a softer mattress and the prescription drug Feldine, which is the brand-name for Piroxicam. *See* Defs.' 7.1 Statement at ¶¶ 1, 6–7, 13–17, 19–21, 23–27, 29, 32, 37–40, 42–47, 54, 68–69, 71, 73, 76, 79–82, 84–88, 91, 93, 95, 97, 99, 112, 116–18, 120–30, 139, & 144–46; *see also* Robinson Decl. at ¶¶ 24, 26–27, 29, 31–34, 41, 44–45, 51, 53, 55–56, 63, 65, 69–71, 80, 91–92, 95–97, 99, 103, 106–09, 111, 114–17, & 122.

### B. Eighth Amendment

To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.'" *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y.), *aff'd*, 970 F.2d

---

[3] In his Declaration, Plaintiff includes two paragraphs numbered 67, and two paragraphs numbered 68. *See* Robinson Decl. For the sake of clarity, we will refer to these paragraphs as 67a, 68a, 67b, and 68b, respectively.

[4] *See infra* Part II.B at n.4.

896 (2d Cir. 1992) (quoting *Estelle v. Gamble*, 429 U.S. at 102, 105-06).

To state a claim for denial of medical care, a prisoner must demonstrate (1) a serious medical condition and (2) deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994); *Hathaway v. Coughlin ("Hathaway I")*, 37 F.3d 63, 66 (2d Cir. 1994). The first prong is an objective standard and considers whether the medical condition is sufficiently serious. The Second Circuit has stated that a medical need is serious if it presents "a condition of urgency that may result in degeneration or extreme pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citation omitted). Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individuals' daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d at 702 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)). The second prong is a subjective standard requiring a plaintiff to demonstrate that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness. *Wilson v. Seiter*, 501 U.S. 294, 301-03 (1991); *Hathaway I*, 37 F.3d at 66. A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan*, 511 U.S. at 836. This requires "something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835; *see also Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (citing *Farmer*). Further, a showing of medical malpractice is insufficient to support an Eighth Amendment claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance v. Armstrong*, 143 F.3d at 702 (quoting

*Hathaway v. Coughlin ("Hathaway II")*, 99 F.3d 550, 553 (2d Cir. 1996)); *see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citations omitted).

Plaintiff has presented us with a lengthy and documented history of the severe and chronic pain he has suffered as a result of his spinal condition. *See, e.g.,* Robinson Decl. at ¶¶ 6, 26–28, 30–35, 45–46, 53–55, 63, 68b–73, & 88–96. For purposes of the objective element of our analysis, Plaintiff's back pain clearly constitutes a serious underlying medical condition. *See Rodriguez v. Smith*, 2011 WL 4479689, at *5 (N.D.N.Y. Aug. 19, 2011) (collecting cases for the proposition that severe long-lasting back pain constitutes a serious medical need); *see also Brock v. Wright*, 315 F.3d 158,163 (2d Cir. 2003) (overturning district court's ruling that pain caused by a keloid scar on the plaintiff's cheek was not a sufficiently serious medical need because "the district court either erred in not treating [plaintiff's claims of chronic pain] as true or [in] believ[ing] that only extreme pain or a degenerative condition would suffice to meet the legal standard"). Nonetheless, Plaintiff's claim still fails because his preference for a treatment other than the one provided by Defendants does not rise to the level of an Eighth Amendment violation.

An inmate who disagrees with his physician over the appropriate course of treatment has no claim under § 1983 if the treatment provided is "adequate." *Chance v. Armstrong,* 143 F.3d at 703. The word "adequate" reflects the reality that "[p]rison officials are not obligated to provide inmates with whatever care the inmates desire. Rather, prison officials fulfill their obligations under the Eighth Amendment when the care provided is 'reasonable.'" *Jones v. Westchester Cnty. Dep't of Corrs.*, 557 F. Supp. 2d 408, 413 (S.D.N.Y. 2008). "[D]isagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention are not adequate grounds for a section 1983 claim." *Sonds v. St. Barnabas*

*Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001).

In his fifty-four page, hand-written Amended Complaint, Plaintiff alleges, in sum and substance, that Defendants were deliberately indifferent to his serious medical needs because they refused to provide him with the treatment he desired – *i.e.*, PT, Piroxicam, Neurontin, a softer mattress, a brace, and release from programming, *etc. See supra* Part II.A. However, Plaintiff's medical records, as well as his own Declaration, reveal that on those occasions when Plaintiff requested treatment for his back pain, he was nearly[5] always provided with some form of treatment. These treatments included, over-the-counter drugs such as ibuprofen, Motrin, Bengay, and Tylenol, as well as numerous prescription drugs, a course of in-cell exercises, and warm soaking, or some combination thereof. *See id.*; *see also* Dkt. No. 56, Sandra Martin-Smith Decl., dated Mar. 20, 2013, at ¶¶ 13–14, 20–21, 23–24, 26–30, 32–34, 36, 39, 44–47, 49, 51–54, 61, 75–76, 78, 83, 86–89, 91, 95, 98, 100, 102–04, 106–07, 123–25, 127–37, 146, & 143; Dkt. No. 56, Portions of Robinson's Ambulatory Health R. (hereinafter "AHR"), at Entries dated Dec. 30, 2009, Jan. 6, 15, 18–21, 23, & 25–26, 2010, Feb. 3–5, 8, 11–12, 15–17, 21, 24, & 26, 2010, Mar. 18 & 29, 2010, April 7, 15, 20, & 23, 2010, May 1, 3–4, 7, 10–14, 20, & 26, 2010, June 4, 8, 11, & 15, 2010, July 28 & 30, 2010,

---

[5] In the ten months Plaintiff was incarcerated at MCF there were at least three occasions on which he did not receive treatment for his back despite requesting it. However, the circumstances under which such lapses occurred do not evince a conscious disregard of Plaintiff's serious medical needs. For example, on one occasion, medical staff refused to give Plaintiff pain medication because he was due to see a doctor; however, pain medication was given to Plaintiff later that same day. *See* Martin-Smith Decl. at ¶¶ 22 & 23; *see also* Dkt. No. 56, Portions of Robinson's Ambulatory Health R. (hereinafter "AHR"), at Entry dated Jan. 19, 2010. On another, Plaintiff was denied a dose of ibuprofen because he had already received a dose within the previous four hours. *See* Dkt. No. 56, Sandra Martin-Smith Decl., dated Mar. 20, 2013, at ¶ 84; *see also* AHR at Entry dated May 1, 2010. Additionally, Plaintiff's request to see a doctor went unfulfilled on a different occasion because on the day of his scheduled appointment he left the building for a court appearance. *See* Martin-Smith Decl. at ¶¶ 120 & 121; *see also* AHR at Entries dated July 23 & 27, 2010. Moreover, even if these instances could be considered acts of deliberate indifference, here, they would not result in liability for either Defendant because there is no indication that either of them were personally involved in any of these instances. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (holding that the "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983") (citations omitted).

Aug. 2–3, 9–10, 16–18, & 30–31, 2010, September 2–3, 21, 23, 28, & 30, 2010, October 19 & 21, 2010. Indeed, Defendants eventually even prescribed a softer mattress for Plaintiff as well as the drug Feldine, which is the brand name of the generic drug Piroxicam. AHR at Entries dated Jan. 26 & 29, 2010, & Feb. 24, 2010; *see also* Dkt. No. 56-1, Saed Haider-Shah Decl., dated Jan. 3, 2012, at ¶¶ 7–8.

Furthermore, Plaintiff's repeated claims that Defendants lacked medical reasons for denying the various forms of treatment that he requested are belied by the record. Plaintiff's medical records clearly establish that Defendants denied Plaintiff's various requests because they believed the requested forms of treatment were not medically necessary.

For example, Plaintiff claims that he was denied medical care on December 30, 2009, when Defendant Dr. Vladamundi failed to provide a thorough physical examination of him before deciding that he did not need PT. Robinson Decl. at ¶¶ 11–20. Yet, Dr. Vladamundi claims to have based his decision to deny PT to Plaintiff on more than just his examination. Indeed, according to Defendant Vladamundi, and Plaintiff's medical records, his decision was based on a combination of factors including "[Plaintiff's] prior x-rays [which] were negative and his steady gait." Dkt. No. 56-2, Krishna Vladamundi Decl., dated Mar. 13, 2012, at ¶¶ 14–15. Moreover, Defendant Vladamundi did not refuse treatment all together, instead he recommended that Defendant do his own exercises and he prescribed ibuprofen and Bengay as needed for treatment of Plaintiff's back pain. *Id.* at ¶ 14; AHR at Entry dated Dec. 30, 2009. Likewise, Plaintiff alleges that on February 3, 2010, he met with Defendant Dr. Haider-Shah for the first time, that he informed Defendant of the fact that he had been receiving PT and Pyroxicam at his previous facility for treatment of his back pain and would like to continue those treatments; nonetheless, Defendant Dr. Haider-Shah

refused and prescribed the drug Firocet instead. Robinson Decl. at ¶¶ 46–52.

At worst, the failure to conduct a more thorough physical examination of Plaintiff might amount to medical negligence. Yet, mere medical negligence does not, in and of itself, constitute deliberate indifference. *Farmer v. Brennan*, 511 U.S. at 835. Nor do Defendants' decisions to prescribe in-cell exercises and warm soaking instead of physical therapy, or pain killers other than the ones he requested, constitute deliberate indifference. *See Morrison v. Mamis,* 2008 WL 5451639 at *8, *10 (S.D.N.Y. Dec.18, 2008) (doctors refusal to prescribe physical therapy, switch prescription pain killers, or allow use of Bengay by an inmate complaining of back pain did not rise to deliberate indifference); *see also Rush v. Fischer*, 2011 WL 6747392, at *3 (S.D.N.Y. Dec. 23, 2011) ) (citing, *inter alia*, *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011), for the proposition that "[t]he decision to prescribe one form of pain medication in place of another does not constitute deliberate indifference to a prisoner's serious medical needs"); *Veloz v. New York*, 339 F. Supp. 2d 505, 525 (S.D.N.Y. 2004) (decision to prescribe Tylenol rather than prescription medication for treatment of back pain constituted a non-actionable disagreement between an inmate and his physician over the course of treatment, and not deliberate indifference).

Moreover, Plaintiff's medical records are replete with evidence that Defendants' denials were supported by the results of routine physical examinations, neurological tests, and their observations on multiple occasions that despite Plaintiff's claims that he was in severe pain, he was able to ambulate without difficulty. *See* Martin-Smith Decl. at ¶¶ 13, 20, 30, 40–44, 49, 56–57, 62, 81, 88, 95, 102–04, 107, 113, & 127; *see also* AHR at Entries dated Dec. 30, 2009, Jan 15 & 25, 2010, Feb. 7–11 & 16, 2010, Mar. 2, 9, & 18, 2010, April 27, 2010, May 4 & 13, 2010, June 4, 7, 9, 15, 24 & 28, 2010, & Aug. 3, 2010.

Thus, it is clear from the evidence submitted in this case, that although Plaintiff did not receive the treatment that he desired, no rational juror could conclude that Defendants made a conscious effort to deliberately ignore his condition.

Accordingly, we recommend that Defendants' Motion be **GRANTED**, and that this action be dismissed in its entirety.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Second Motion for Summary Judgment (Dkt. No. 55) be **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: January 21, 2014
      Albany, New York

Randolph F. Treece
U.S. Magistrate Judge